UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**RICHARD CHRISTOPHER WRIGHT**,<br><br>Debtor. | Case No. **14-61107-13** |

**MEMORANDUM OF DECISION**

At Butte in said District this 13th day of February, 2015.

The Debtor's Motion (Document No. 19) to avoid judicial liens of Mary Satterfield ("Satterfield") under 11 U.S.C. § 522(f)(1)(A) is pending in this Chapter 13 case. Satterfield filed objections on the grounds: that Debtor recorded his declaration of homestead after her judicial liens attached; and that the Debtor cannot be living at two separate locations, both of which he claims as his homestead. The Court held a hearing on the Debtor's Motion at Great Falls on February 6, 2015. Debtor Richard Christopher Wright ("Wright" or "Debtor") appeared and testified, represented by attorney Gary S. Deschenes ("Deschenes") of Great Falls, Montana. Attorney Torger S. Oaas ("Oass") of Lewistown represented Satterfield. The Court admitted Debtor's Exhibits ("Ex.") 1, 4 and 5, and Satterfield's Ex. 1, into evidence without objection. At the conclusion of the parties' cases-in-chief the Court took the matter under advisement. After review of the record and applicable law, this matter is ready for decision. For the reasons set forth below Satterfield's objection will be overruled; Debtor's Motion to avoid her judicial liens will be granted by separate order.

This Court has exclusive jurisdiction in this Chapter 13 bankruptcy under 28 U.S.C. §

1

1334(a). Debtor's Motion to avoid Satterfield's judicial liens is a core proceeding under 28 U.S.C. § 157(b)(2).

## FACTS

The Debtor Chris Wright is employed in a bail bond business in Lewistown, Montana, where he resides at 316 West Boulevard. His bail bond company is called Central Montana Bail Bonds ("CMBB"), which is a "d/b/a" by which he conducts or conducted business along with Marty Maciel ("Maciel").

Wright described his residence at 316 West Boulevard as a small older stick house built around 1900 on a half lot in the middle of a block in Lewistown, located next door to another small house on a half lot at 314 West Boulevard which he also owns. Together, 314 West Boulevard and 316 West Boulevard comprise one lot according to the city records, Wright testified. The surrounding lots are larger lots.

Wright testified that he purchased 316 West Boulevard in approximately 2006 or 2007, but did not complete the purchase of 314 West Boulevard until approximately 2 years later in 2008 or 2009. He testified that he intended either to connect the two small houses at 314 and 316 West Boulevard or to tear them down and build a single house on both lots.

Wright recorded a declaration of homestead on May 10, 2007, in Fergus County, Montana. Satterfield's Ex. 1 is a copy of the declaration of homestead and describes Wright's homestead as the "Southwesterly One-half of Lot 9, Block 2 of Janeaux's Addition 2." Under cross examination Wright clarified that Ex. 1 is a homestead declaration for 316 Boulevard only.

Satterfield brought an action against Wright and Maciel, d/b/a Central Montana Bail Bonds, in Cause No. DV-2013-18, Montana Tenth Judicial District Court, Fergus County. On

May 21, 2014, the state court entered a judgment in Satterfield's favor against defendants Maciel and CMBB in DV-2013-18, in the amount of $15,950.00 plus interest and costs. Debtor's Ex. 4. In addition Ex. 4 provided for an award of attorney fees owed to Satterfield by Maciel and CMBB.

Ex. 5 is a second judgment entered in Satterfield's favor against Maciel and Wright d/b/a CMBB entered in DV-2013-18 on June 16, 2014, for attorney fees and costs in the amount of $5,316.00 plus $674.44 for costs and interest. From the time these judgments were docketed, they became liens against Wright's real property in the county pursuant to MONT. CODE ANN. ("MCA") § 25-9-301(2).[1] Both judgments are on appeal.[2]

Wright recorded a second declaration of homestead on September 2, 2014, Debtor's Ex. 1, in which he described the homestead as "Southwesterly one-half of Lot 9, Block 2 of Janeaux's addition no. 2 to the City of Lewistown, Fergus county, Montana, and the Northeasterly one-half of Lot 9, Block 2 of Janeaux addition no. 2 to the City of Lewistown, according to the official recorded Map or Plat thereof in file and of record in the office of the clerk and Recorder, Fergus County, Montana."

Wright filed his voluntary Chapter 13 petition on September 22, 2014. The petition lists Debtor's street address as 316 West Boulevard in Lewistown. The Notice of Commencement of this case and of the 11 U.S.C. § 341(a) meeting of creditors was mailed to creditors, including

---

[1] Section 25-9-301(2) provides in pertinent part: "From the time the judgment is docketed, it becomes a lien upon all real property of the judgment debtor that is not exempt from execution in the county and that is either owned by the judgment debtor at the time or afterward acquired by the judgment debtor before the lien expires."

[2] Wright's appeal has been stayed.

3

Satterfield, on September 25, 2014. The Notice (Doc. 4) includes a "Deadline to Object to Exemptions" which states "Thirty (30) days after the conclusion of the meeting of creditors."

Debtor filed Schedule C on October 13, 2014, on which he listed a homestead exemption on property described as "314 and 316 W Boulevard Street, Lewistown, Montana." The meeting of creditors took place on October 20, 2014. The 30-day deadline to object to Debtor's homestead exemption expired; no objection was filed. Debtor's Chapter 13 Plan was confirmed on December 11, 2014, the same date Debtor filed his Motion to avoid Satterfield's judicial liens.

Satterfield filed objections to Debtor's Motion to avoid her liens on two grounds. First, she objects that her judicial liens attached before the Debtor recorded his second declaration of homestead which included 314 West Boulevard. Second, she argues that the Debtor "has not explained how he can be living at two separate locations."

Wright testified that he lives in the house on 316 West Boulevard and has never lived in the house at 314 West Boulevard, although repair workers have stayed in the house at 314 West Boulevard,[3] as have Wright's son and daughter-in-law and occasional guests. Under cross examination Wright admitted that he has never earned rental income or any commercial income from 314 West Boulevard. He testified that the value of both properties together is approximately $49,000.[4]

Wright testified that the house at 314 West Boulevard has not been habitable for about a

---

[3] His son and daughter-in-law have lived at 316 West Boulevard also, and he testified that they may return.

[4] Satterfield's counsel admitted at the beginning of the hearing that the combined value of both lots is less than the $250,000 homestead exemption allowed under Montana law.

year.  He explained that 314 West Boulevard has a sandstone foundation, which caved in,[5] that it has bad wiring and a faulty sewer system and that it needs a lot of work in order to make it habitable again.  Currently, Wright testified, he uses 314 West Boulevard as a storage shed, for parking and for a dog kennel, which runs across both the back of both lots at 314 and 316 West Boulevard.

If he did not have 314 West Boulevard, Wright testified, his two vehicles and belongings would be out on the street because he and his family have so many possessions and both lots are so small and located in the middle of the block.  At certain times, Wright testified, the town of Lewistown allows on-street parking on West Boulevard, but does not at present.  He testified that he cannot rent storage space for his belongings elsewhere because it would cost too much and that using 314 West Boulevard for storage is the only way he can maintain his household.

Wright testified that Satterfield's judicial liens are against both of his properties at 314 and 316 West Boulevard and that her liens interfere with his enjoyment of his homestead.  The evidence is undisputed that no value exists in the claimed homestead above the allowed $250,000 Montana homestead exemption, MCA § 70-32-104.  Wright testified that both properties are pledged as collateral for debts of his bail bond business to his insurance company, but that currently no amounts are owing.

Although Satterfield's attorney cross examined the Debtor, she called no witnesses.  As a result, Wright's testimony regarding his need of 314 West Boulevard for family storage, parking and dog kennels is uncontroverted.  The Court observed Wright's demeanor while he testified under oath and under cross examination about his need for 314 West Boulevard; the Court finds

---

[5]Wright testified the windows at the back of 314 West Boulevard fell out.

that Wright is a credible witness.  *See In re Taylor*, 514 F.2d 1370, 1373-74 (9th Cir. 1975); *see also Casey v. Kasal*, 223 B.R. 879, 886 (E.D. Pa. 1998).

## DISCUSSION

Debtor moves to avoid Satterfield's judicial liens under § 522(f)(1)(A), which provides that "a debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is – (a) a judicial lien." § 522(f)(1)(A).  The evidence clearly shows that Satterfield's liens are judicial liens resulting from judgments, Ex. 4 and 5.

Section 522(b)(3)(A) provides for exemption of property under state or local law "that is applicable on the date of the filing of the petition."  A debtor's entitlement to claimed exemptions generally is determined as of the date the bankruptcy petition is filed.  *In re Cherchione*, 414 B.R. 540, (9th Cir. BAP 2009); *In re Chiu*, 266 B.R. 743, 751 (9th Cir. BAP 2001).  However, the Ninth Circuit Court of Appeals has reversed this Court for ruling that debtors could not file a declaration of homestead even after the date of their bankruptcy petition. *See Martinson v. Michael*, 163 F.3d 526, 529 (9th Cir. 1998).

Satterfield's first objection is that her judicial liens attached prior to the date Wright recorded his second declaration of homestead, which added 314 West Boulevard.  Satterfield cites no Montana case law or statute which provides that her judicial liens take priority over Wright's homestead exemption because the recording of his declaration of homestead occurred after the entry of her judgment liens.  One example of such a statute is MCA § 70-3-113: "Priority of liens.  Other things being equal, different liens upon the same property have priority according to the time of their creation."  Wright's homestead exemption is not a lien.

6

The general rule governing exemption of homesteads is: "The homestead is exempt from execution or forced sale, except as in this chapter provided." MCA § 70-32-201. The instances in which a homestead is subject to execution or forced sale in satisfaction of judgments are listed at § 70-32-202. They include judgments on: (1) debts secured by construction or vendors' liens upon the premises; (2) debts secured by mortgages on the premises; and (3) debts secured by mortgages on the premises "which were executed and recorded before the declaration of homestead was filed for record." § 70-32-202(3).

Satterfield's judicial liens are not from judgments obtained on debts secured by construction or vendors' liens or upon mortgages.[6] If the Montana legislature wanted other judicial liens, which attached before a homestead declaration was filed for record, to prevail over a homestead exemption, it could have included such judicial liens in the specific exceptions listed at § 70-32-202. The legislature did not include judicial liens such as Satterfield's in § 70-32-202, and therefore the general rule applies and Wright's homestead is exempt from execution or forced sale based upon Satterfield's judgments.[7]

Satterfieled's second objection to Debtor's Motion is that he only resides at 316 West Boulevard, that he never has resided at 314 West Boulevard and no apparent relationship or interdependence exists between the parcels. In other words, Satterfield objects to the extent of

---

[6]The judgment shown by Ex. 4 indicates that Satterfield's claim was based on a certain sales agreement.

[7]MCA § 70-32-203 authorizes a creditor with a judgment obtained not within the classes enumerated in § 70-32-202, to apply for the appointment of persons to appraise the value of the homestead in case the value exceeds the $250,000 limitation fixed by § 70-32-104(1). *See, e.g., Reichert v. Koch* (1983), 202 Mont. 167, 172, 655 P.2d 993, 995. Counsel for the parties stipulated at the hearing that no excess value exists over Wright's claimed homestead.

Debtor's claimed homestead exemption, even though she did not file a timely objection to Debtor's claim of exemption.

The United States Supreme Court held in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642-44, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992), that where a trustee failed to timely object under Rule 4003(b) to a claimed exemption, the trustee was not allowed thereafter to contest the exemption. The Ninth Circuit discussed *Taylor* in *In re Morgan-Busby*, 272 B.R. 257, 265 (9th Cir. 2002) and held that all objections to exemptions, including those objecting to the value of property subject to exemption, are subject to the time limitation of Rule 4003(b), in order to encourage finality. "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor v. Freeland & Kronz*, 503 U.S. at 644, 112 S.Ct. at 1648. In *Schwab v. Reilly*, 560 U.S. 770, 775-76, 130 S.Ct. 2652, 2658, 177 L.Ed.2d 234 (2010), the United States Supreme Court reaffirmed *Taylor* for the proposition, "[i]f an interested party fails to object within the time allowed, a claimed exemption will exclude the subject property from the estate even if the exemption's value exceeds what the Code permits." (Citing *Taylor*, 503 U.S. at 642-43). Such a result, i.e., that an exemption claim that is totally baseless will be allowed if there is no timely objection, has been characterized as "exemption by default." *In re Gardner*, 417 B.R. 616, 621 (Bankr. D. Idaho 2009), *aff'd.*, 2010 WL 6259995 (9th Cir. BAP) (citing *Heintz v. Carey (In re Heintz)*, 198 B.R. 581, 583-84 (9th Cir. BAP 1996) (citing cases)).

Satterfield's objection to Debtor's Motion to avoid her judicial liens challenges the validity of Debtor's claim of exemption in 314 West Boulevard, even though she did not file a timely objection to his claim of exemption. In *Gardner*, the bankruptcy court explained:

> Though Debtors' Rich Land Property is exempt for purposes of their

8

bankruptcy case, this Court, following the lead of the Ninth Circuit Bankruptcy Appellate Panel, has held that the failure of a creditor to timely object to a claim of exemption does not prevent that creditor from challenging the validity of the exemption in defense of a debtor's later motion to avoid its judicial lien. *See In re Conley*, 99.1 I.B.C.R. 7 (Bankr.D.Idaho 1999) (citing *Morgan v. Fed. Deposit Ins. Corp. (In re Morgan)*, 149 B.R. 147 (9th Cir.BAP1993)).

In *Morgan*, the Ninth Circuit Bankruptcy Appellate Panel outlined a four-part test for avoidance of a lien:

> (1) There must be an exemption to which the debtor "would have been entitled" under subsection (b) of § 522;
>
> (2) The property must be listed on the debtor's schedules and claimed as exempt;
>
> (3) The lien at issue must impair the claimed exemption; and
>
> (4) The lien must be either a judicial lien or another type of lien specified by the statute.

*In re Morgan*, 149 B.R. at 151 (citing *In re Mohring*, 142 B.R. 389, 392 (Bankr.E.D.Cal.1992)). In this case, Debtors listed the Rich Lane Property in their schedule C, and claimed it as exempt under Idaho Code § 55–1003. The Dykeman lien and the Campbell lien are both judicial liens and they both impair Debtors' claimed exemption. Accordingly, the second through the fourth elements of this test are satisfied. Here, as in *Morgan*, only the first element of the test is at issue.

Like the debtor in *In re Morgan*, Debtors argue that the validation of their homestead exemption by default satisfies the first element of this test. In *In re Morgan*, the Panel declined to accept that argument. The Panel explained:

> The first element of the test described above is that the debtor "would have been entitled" to the exemption under § 522(b). That the debtor is entitled to the exemption by virtue of § 522(l) does not mean that the debtor "would have been entitled" to the exemption under § 522(b) which provides that a debtor may claim either state or federal exemptions. This language requires the court to find that the debtor is entitled to the exemption under relevant state or federal law in order to authorize the avoiding of a lien under § 522(f). Reliance by the exemption-by-default of § 522(l) does not satisfy this burden.

9

*In re Morgan*, 149 B.R. at 151–52. Agreeing with that approach, this Court noted:

> A judicial lien creditor in most cases has no incentive or reason to object to an improper claim of exemption in the early stages of the case and within the time limits required by Rule 4003(b). But the same creditor may have a vital interest in contesting the exemption later—when (and if) the debtor seeks to avoid the judicial lien.

*In re Conley*, 99.1 I.B.C.R. at 7.

> "[A]t a hearing on [a] motion to avoid a lien under § 522(f), the creditor bears 'the burden of proving that the exemptions are not properly claimed.' " *In re Morgan*, 149 B.R. at 152, n. 3 (citing Rule 4003(c)). However, if a lien creditor comes forward with evidence questioning the validity of the exemption, the debtor may need to produce evidence supporting the claim of exemption in order to persuade the court to allow the lien avoidance. *Id*. at 152, n. 4. In this case, Campbells and Dykeman both assert that Debtors' failure to record a notice of abandonment on the Von Elm Property precludes a claim of exemption in the Rich Lane Property. They are correct.

*Gardner*, 417 B.R. at 621-22.

As in *Morgan*, elements (2), (3) and (4) are not in dispute in the instant case. Satterfield's liens are judicial liens; 314 West Boulevard is listed in the Debtor's Schedules and claimed as exempt; and Wright's evidence that Satterfield's liens impair his homestead exemption is uncontroverted. Wright uses 314 West Boulevard for parking, storage and his dog kennels, which are built across both parcels. With Satterfield having the burden of proving that the homestead exemption is not properly claimed, the Court turns to the contentions on the first element, i.e., whether Wright's claim of homestead exemption in 314 West Boulevard is an exemption to which the Debtor "would have been entitled" under § 522(b). *Morgan*, 149 B.R. at 151.

Pursuant to § 522(b)(2), Montana has opted out of the federal exemption scheme by means of MCA § 31-2-106. *In re Moore*, 21 Mont. B.R. 255, 257 (Bankr. D. Mont. 2006); *In re*

10

*Zimmerman*, 2002 MT 90, ¶8, 19 Mont. B.R. 368, 370 (2002). The Court thus looks to state law rather than federal law to determine the allowance of the Debtor's claimed homestead exemption in 314 West Boulevard. *Moore*, 21 Mont. B.R. at 257. Under Montana law, homestead and exemption statutes must be liberally construed in favor of debtors. Constitution of the State of Montana, Article XIII, section 5; *In re Zimmerman*, 2002 MT 90, at ¶15, 19 Mont. B.R. at 373.

In the context of Chapter 13 bankruptcies, the allowance or disallowance of an exemption can affect the amount a debtor must contribute to his or her Chapter 13 plan. As explained by a leading bankruptcy commentator:

> A fundamental component of an individual debtor's fresh start in bankruptcy is the debtor's ability to set aside certain property as exempt from the claims of creditors. Exemptions of property, together with the discharge of claims, lets the debtor maintain an appropriate standard of living as he or she goes forward in the bankruptcy case.

4 COLLIER ON BANKRUPTCY ¶ 522.01, p. 522-14 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed., 2011).

Satterfield objects that Wright has never resided at 314 West Boulevard, so he cannot claim it as an exempt homestead. MCA § 70-32-101 provides that a "homestead consists of the dwelling house or mobile home, and all appurtenances, in which the claimant resides and the land, if any, on which the same is situated, selected as provided in this chapter." By way of limitation, MCA § 70-32-104(1) provides that a "homestead may not exceed $250,000 in value."

*Neel* articulated the general intent of the homestead exemption scheme, stating that "[t]he purpose of the framers of the law was to secure a home beyond the reach of financial misfortune, around which gather the affections of the family; the greatest incentive to virtue, honor and industry." *Neel*, 207 Mont. at 387, 675 P.2d at 102; *Earls v. Chase Bank of Texas, N.A.*, 2002

11

MT 249, ¶ 23, 312 Mont. 147, 154, ¶ 23 59 P.3d 364, 368, ¶ 23.  This language clearly contemplates a financial utility to the homestead, which is reflected in the history of the homestead legislation and supports Wright's claim of homestead exemption in 314 West Boulevard because it provides the means, through parking and storage space for which he otherwise would have to pay "to secure a home beyond the reach of financial misfortune."

In *Moore,* this Court construed *Oregon Mortgage Co., Ltd. v. Dunbar* (1930), 87 Mont. 603, 289 P. 559-60, and concluded that Montana's homestead laws do not appear to prohibit debtors from claiming a homestead exemption in multiple parcels of property provided the claimed exemption does not exceed the statutory limitations and provided the allowance of the exemption furthers the purpose of the homestead laws.  *Moore*, 21 Mont. B.R. at 258-59.  The Court agreed that "a debtor may be entitled to claim a homestead exemption on multiple parcels of property if the debtor adequately demonstrates that the parcels appurtenant to the dwelling are in fact utilized by the debtor indiscriminately for the purpose of maintaining the homestead[.]" *Moore*, 21 Mont. B.R. at 259-60.  The purpose of the homestead exemption is to preserve the home and those adjacent appurtenances essential to its continued enjoyment.  *In re Schriock*, 192 B.R. 514, 515 (Bankr. N.D. 1995).  "This concept should not be understood in terms of acreage or boundaries but rather in terms of how the adjacent land is used and how it contributes to, or preserves the enjoyment of the home." *Id.*

Satterfield cites *Moore* in objecting to Wright's homestead on the ground that he does not reside at 314 West Boulevard and no apparent relationship or interdependence exists between the parcels.  In *Moore*, the Court sustained the Trustee's objection to a homestead exemption in a separate 20 acre parcel because no showing of an apparent relationship or interdependency

existed between it and the 30 acre homestead parcel and the debtor's continued enjoyment of his home did not necessarily required the 20 acre parcel. *Moore*, 21 Mont. B.R. at 260. In the instant case, by contrast, the evidence is uncontroverted that the Debtor's continued enjoyment of his home at 316 West Boulevard depends on his being able to use 314 West Boulevard for storage for his and his family's belongings, for parking and for his dog kennels, which are built across both adjacent parcels.

Wright testified that he cannot afford to pay for a storage space and that any amount Wright would have to pay for storage and parking would reduce the amount he could commit to make payments under his Chapter 13 Plan. The evidence admitted at trial is uncontroverted that, at present, Wright does not have the option of on-street parking on West Boulevard and 316 West Boulevard by itself is too small to store all his belongings and to park his vehicles off the street.

Satterfield called no witnesses and offered no evidence to contradict Wright's testimony. Wright's testimony is credible, and based on his uncontroverted testimony this Court finds that, unlike the adjacent parcel in *Moore*, 314 West Boulevard is necessary for Wright's continued enjoyment of his home at 316 West Boulevard because of its interdependency for purposes of parking, storage and his dog kennels. In sum, based upon the language of MCA §§ 70-32-101, 70-32-104, 70-32-201 and 70-32-202, and under the liberal construction of those statutes under the Montana Constitution, this Court finds and concludes that Satterfield failed to satisfy her burden of proof of showing by a preponderance of the evidence that the Debtor's homestead at 314 West Boulevard in Lewistown is not properly claimed.

Turning back to the Debtor's Motion, under § 522(f)(2)(A) a lien shall be considered to

impair an exemption to the extent that the sum of: (I) The lien, (ii) all other liens on the property, and (iii) the amount of the exemption that the debtor could claim if no liens existed on the property, exceeds the value that the debtor's interest in the property would have in the absence of any liens. The record shows that only Satterfield has liens against Debtor's homestead. Ex. 4 and 5 show awards for Satterfield totaling $21,940.44. Adding that sum to the $250,000 allowable exemption results in a total of $271,940.44. Satterfield's lien impairs Debtor's exemption to the extent that $271,940.44 exceeds the value of the Debtor's interest, $49,000, which is the sum of $222,940.44. The result is that Satterfield's judicial liens are wholly avoidable under § 522(f)(1)(A).

**IT IS ORDERED** a separate Order shall be entered in conformity with the above overruling Satterfield's objection and granting Debtor's Motion to avoid Satterfield's judicial liens arising from judgments against the Debtor entered in Cause No. DV-2013-18, Montana Tenth Judicial District Court, Fergus County.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana